## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JOEL CARTER,

             Plaintiff,

vs.                                         CASE NO. 3:02-cv-1154-J-TEM

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

             Defendant.

_____

## ORDER AND OPINION

     This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB"). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

     Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations. Accordingly, the matter has been decided on the written record. The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. For the reasons set out herein, the Commissioner's decision is **REVERSED and REMANDED**.

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue is substituted as Defendant herein.

## I. Procedural History

On December 10, 1996, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 86-91).   Plaintiff's application was denied initially and upon reconsideration (Tr. 81-83).  After exhausting his administrative remedies, Plaintiff appealed the decision of the Commissioner (Tr. 685).  On October 25, 2001, this Court remanded the case for the Commissioner to consider evidence regarding Plaintiff's alleged mental impairment(s) (Tr. 703-10).

On January 22, 2002, the Appeals Council remanded the case to the Office of Hearings and Appeals (Tr. 711-12).  On October 25, 2002 an unfavorable decision was issued by Linda Haack (Tr. 685).  Subsequently, the case was remanded after a cassette tape of a hearing was lost, and a new ALJ was assigned to Plaintiff's case (Doc. #26 at 3). Administrative Law Judge John Thompson (the "ALJ") was assigned to the case and he issued an unfavorable decision on March 10, 2006 (Doc. #26 at 3).  Plaintiff now appeals.

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520(a)(4)(i-v);[2] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Plaintiff

---

[2] All references made to 20 C.F.R. will be to the 2008 edition unless otherwise specified.

bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.

1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations.  20 C.F.R. § 404.704.

### III. Background Facts

Plaintiff was fifty-one years old at the time of the ALJ's decision (Tr.  883).  Plaintiff alleges he became disabled on March 9, 1992, due to a back injury he sustained at work (Tr. 132, 687, 889-91).  Plaintiff has a high school diploma and some college education (Tr. 883-84).  Plaintiff also has past relevant work experience as a garbage collector and floor waxer (Tr. 687, 883, 885-90).

On March 9, 1992, Plaintiff injured himself at work by lifting a 55 gallon drum, which fell onto his chest (Tr. 609).  As a result of his injury, Plaintiff underwent a lumbar laminectomy at L5-S1 on July 22, 1992 (Tr. 264-65, 379, 609).  Subsequent to his

laminectomy, Plaintiff continued to experience back pain and presented to the hospital on numerous occasions (*see* Tr. 203-40).   Approximately six months after his surgery, on December 14, 1992, Plaintiff reported that he cooked his own meals, walked to the store on a typical day, and that he was "very active" in his church–attending services three times per week (Tr. 434).

On May 7, 1993, the results of a magnetic resonance Image ("MRI") taken of Plaintiff's lumbar spine showed post-operative changes at L5-S1 with no significant stenosis of the thecal sac and no recurrent herniation (Tr. 258).   The results of a MRI taken on April 25, 1994 were as follows: "mild disk space narrowing at the L5/S1 intervertebral disk space.   The height of the vertebral bodies and remaining intervertebral disk spaces are well maintained.   There is no evidence of spondylolysis or spondylolsthesis.   The surrounding soft tissues are grossly within normal limits" (Tr. 253).

On May 12, 1994, Plaintiff underwent a Functional Capacity Evaluation (Tr. 786-88). The evaluator noted Plaintiff was able to ambulate without the use of an assistive devise, and that the test results indicated Plaintiff could work at the sedentary level (Tr. 787). Additionally, the examiner noted that, based on Plaintiff's inconsistent performance, Plaintiff could likely engage in work at the light exertional level (Tr. 787).[3]

On June 13, 1994, Plaintiff's treating physician, Thomas R. Murray, M.D. ("Dr. Murray") found Plaintiff to be at maximum medical improvement ("MMI") with a permanent impairment rating of 13 percent of his whole body (Tr. 493).   On January 20, 1995, an x-ray

---

[3]Plaintiff's performance was deemed inconsistent because he reported increasing levels of pain when various sizes of weights were exchanged even though there was no actual increase in weight (Tr. 787).

was taken of Plaintiff's lumbar spine, the results of which were negative (Tr. 222).   On March 13, 1995, Dr. Murray completed an "Authorization for Returning to Work," wherein he stated Plaintiff was restricted to working four (4) hours per day until April 13, 1995, at which time he would be restricted to working six (6) hours per day until May 13, 1995, whereupon he would be released to working a full eight (8) hour day (Tr. 477).   In a subsequent April 12, 1995 "Authorization for Returning to Work," however, Dr. Murray stated Plaintiff was to continue working only four (4) hours per day "until further notice" (Tr. 488).

On September 13, 1995, Howard B. Weiss, D.O. ("Dr. Weiss") examined Plaintiff, apparently, in connection with his worker's compensation claim (Tr. 552-55).   On September 20, 1995, Dr. Weiss reported Plaintiff could work at the sedentary level (Tr. 558).

On December 21, 1995, Plaintiff presented to psychologist Michael P. Pruitt, M.D. ("Dr. Pruitt") with complaints of being depressed for "a couple of months," complaints of decreased sleep, and complaints of memory loss (Tr. 648).   Dr. Pruitt prescribed Plaintiff Elavil (an anti-depressant) and recommend Plaintiff return in three weeks (Tr. 648).   On December 27, 1995, an x-ray taken of Plaintiff's lumbar spine showed normal vertebral heights and no significant disc space narrowing (Tr. 203).   On January 11, 1996, when Plaintiff returned to Dr. Pruitt several months later, he began the first of several fifteen (15) minute therapy sessions (see Tr. 573).   On May 17, 1996, Plaintiff underwent an electromyogram and nerve conduction studies, the results of which were negative with no evidence of radiculopathy (Tr. 460-61).   On November 17, 2000, Dr. Murray filled out a "Medical Impairment Evaluation" (Tr. 641-45).   In that evaluation, Dr. Murray reported that

6

Plaintiff's chronic pain, loss of range of motion ("ROM"), deconditioning, and depression are disabling (Tr. 641-45).

In his decision dated March 10, 2006, the ALJ found Plaintiff had the severe impairments of lumbar disc disease (without evidence of herniation, spinal stenosis, foraminal stenosis or radiculopathy) and depression; however, the ALJ found these impairments did not meet or medically equal, individually or in combination, one of the impairments found in 20 C.F.R. 404 Appx. 1 Sub. P (the "Listings") (Tr. 701).

The ALJ evaluated and considered the medical evidence of record, Plaintiff's testimony, and other evidence of record (Tr. 682-702).  The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform a range of light exertional work where he could lift/carry a maximum of twenty (20) pounds occasionally and ten (10) pounds or less more frequently; sit for six (6) hours; stand and walk for six (6) hours off and on; no exposure to vibration; no climbing of ladders, scaffolds or ropes; no crawling; perform simple repetitive one and two step tasks; and, have contact with the general public, coworkers and supervisors only up to one-third of the workday, including telephone contact (Tr. 701).

At a hearing held on October 13, 2005, the ALJ took testimony from medical advisor, Arthur Lorber, M.D. ("Dr. Lorber") and vocational expert, Melissa Howell (the "VE").  Dr. Lorber testified that Plaintiff underwent a routine discetomy and that the record contains no evidence of complications or documentation of a cause for Plaintiff's ongoing complaints or symptomology (Tr. 698; *see also* Tr. 857-62).  Dr. Lorber additionally stated that it was his opinion Plaintiff's back impairment(s) did not meet or equal Listing 1.04 (Tr. 857).

The ALJ then posed a hypothetical question to the VE based on Plaintiff's RFC, *supra* (Tr. 866-67).[4]  The VE testified that a person with Plaintiff's RFC would not be able to return to Plaintiff's past relevant work (Tr. 867).  The VE additionally testified, however, that an individual with Plaintiff's RFC could perform other work that exists in the regional and national economy (Tr. 868).  Specifically, the VE stated that the hypothetical individual could perform the light level jobs of routing clerk, silver wrapper, cafeteria attendant, and domestic laundry worker (Tr. 868).  *See* United States Dep't of Labor, *Dictionary of Occupational Titles*, §§ 222.687-022; 318.687-018; 311.677-010; 302.685-010 (4th Ed. 1991).  The VE next testified that the hypothetical individual could perform the sedentary jobs of parimutuel ticket checker and escort vehicle driver (Tr. 869).  *See id.* at §§ 219.587-010; 919.663-022.

At Step 5 of the sequential evaluation process, the ALJ found Plaintiff could perform other jobs that exist in significant numbers in the regional and national economy despite his impairments (Tr. 700).  Accordingly, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act (the "Act") prior to his date last insured (September 30, 1995) (Tr. 700).

---

[4]The undersigned notes that, although the ALJ found Plaintiff had the RFC to sit for six (6) hours, at the October 13, 2005 hearing, the ALJ asked the vocational expert to assume Plaintiff had the limitations as described by the testifying medical expert, Dr. Lorber, who stated Plaintiff could only sit for six (6) hours on an intermittent basis (Tr. 858).  The record reflects the VE included the limitations as described by Dr. Lorber when she provided a list of other jobs in the regional and national economy that Plaintiff could perform despite his limitations (*see* Tr. 867-71).

**IV. Analysis**

Plaintiff argues the AlJ erred as a matter of law when he: (1) failed to find Plaintiff's

musculoskeletal impairments either met or equaled a listed impairment under 20 C.F.R.

404 Appx. 1 Sub. P; (2) failed to properly evaluate Plaintiff's subjective complaints of pain;

(3) failed to accord proper weight to the opinions of Plaintiff's treating physicians and failed

to properly address Plaintiff's mental impairment(s); and (4) failed to properly evaluate

Plaintiff's RFC (Doc. #26 at 1).  The undersigned will address Plaintiff's arguments in turn.

**A.  Whether the ALJ Erred by not Finding Plaintiff's Musculoskeletal Impairments either Met or Equaled Listing 1.04 Under 20 C.F.R. 404 Appx. 1 Sub. P**

First, Plaintiff argues the ALJ erred by not finding Plaintiff's musculoskeletal

impairments either met or equaled Listing 1.04 under 20 C.F.R. 404 Appx. 1 Sub. P (Doc.

#26 at 15).  This argument is unpersuasive for the following reasons.  Listing 1.04 provides

in pertinent part as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), *resulting in compromise of a nerve root* (including the cauda equina) or the spinal cord.  With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. 404 Appx. 1 Sub. P (emphasis added).

Here, the ALJ determined Plaintiff's back impairment(s) did not meet or equal a

Listed impairment because the medical findings did not support such a determination (*see*

Tr. 688-89).  Specifically, the ALJ noted that a lumbar MRI, taken on July 21, 1995,

revealed no evidence of disc herniation, spinal stenosis or foraminal stenosis (Tr. 688; *see*

9

*also* Tr. 251).  The ALJ also noted that the results of two x-rays taken of Plaintiff's lumbar spine (one taken on January 20, 1995 and the other on December 27, 1995) were negative (Tr. 688; *see also* Tr. 203, 222).   Additionally, the ALJ pointed to the results of an electromyogram and nerve conduction study, which were both normal with no evidence of radiculopathy (Tr. 688; *see also* Tr. 460-61).

Moreover, the ALJ referenced the testimony of Dr. Lorber, a state agency medical advisor, who testified at the October 13, 2005 hearing that Plaintiff underwent a routine discetomy and that the record contains no evidence of complications or documentation of a cause for Plaintiff's ongoing complaints or symptomology (Tr. 698; *see also* Tr. 857-62). Dr. Lorber additionally stated it was his opinion Plaintiff's back impairment(s) did not meet or equal Listing 1.04 (Tr. 857).

The evidentiary standards for presumptive disability under the Listings are stricter than for cases that proceed to other steps in the sequential evaluation process because the Listings represent an automatic determination of disability based on medical findings rather than an individual judgment based on all relevant factors of a claimant's claim.  *See* 20 C.F.R. § 404.1520; *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).  To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement.  To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings.  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).

Under the circumstances of this case, the evidence of record supports the ALJ's determination that Plaintiff's back impairment(s) do not meet or equal a listed impairment. As discussed *supra*, Plaintiff has provided no evidence that his disorder(s) of the spine

10

have resulted in any nerve root compromise, which is required in order to meet Listing 1.04. Moreover, the ALJ took testimony from a medical advisor who stated, in his opinion, Plaintiff did not meet or equal the requirements of Listing 1.04.  A "medical adviser" is a neutral consultant who, at the request of the Social Security Administration, reviews a claimant's medical records, explains or clarifies information reflected therein, and expresses expert opinions as to the nature and severity of impairments and whether "impairment(s) equals the requirements of any impairment listed in appendix I to th[e] subpart."  20 C.F.R. §§ 404.1527(f)(2)(iii).

When a medical professional functions as an expert witness in the course of an evidentiary hearing before an administrative law judge, Social Security Ruling 96-6p designates such professional as a medical expert, and an ALJ may rely upon testimony of a medical expert when evaluating the nature and extent of a claimant's impairments.  SSR. 96-6p, 1996 WL 374180, at *4 n. 2 (1996); *see Richardson*, 402 U.S. at 408.

Accordingly, the undersigned finds the ALJ committed no error when he found Plaintiff's musculoskeletal impairments did not meet or equal Listing 1.04 under 20 C.F.R. 404 Appx. 1 Sub. P.  Plaintiff provided no evidence that his disorder(s) of the spine resulted in any nerve root compromise and the ALJ relied on testimony from a medical advisor who stated, in his opinion, Plaintiff did not meet or equal the requirements of Listing 1.04.

**B.   Whether the ALJ Erred by not Properly Evaluating Plaintiff's Subjective Complaints of Pain**

Plaintiff's second argument is that the ALJ failed to properly evaluate his subjective complaints of pain.  This argument is also unpersuasive for the following reasons.

The undersigned finds the ALJ properly discounted Plaintiff's complaints of disabling pain by articulating several reasons for finding Plaintiff's subjective complaints not entirely credible.   In addition, the undersigned finds the reasons articulated by the ALJ for discrediting Plaintiff's subjective complaints of pain are supported by substantial evidence of record.

When a plaintiff's credibility is at issue and the Commissioner rejects a plaintiff's allegations of pain, "[the ALJ] must articulate explicit and adequate reasons" for doing so. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).  In *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987), the Court stated that, when a claimant's testimony is critical, the ALJ must articulate adequate reasons for questioning the claimant's credibility.   *Allen v. Sullivan*, 880 F.2d 1200, 1202-03 (11th Cir. 1989); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *Walker v. Bowen*, 826 F.2d 996, 1004 (11th Cir. 1987).   Furthermore, the reasons given for discrediting a plaintiff's pain testimony must be based on substantial evidence.   *Jones v. DHHS*, 941 F.2d 1529, 1532 (11th Cir. 1991).

In the instant case, the ALJ determined Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible in light of Plaintiff's medical history, reports of treating and examining sources, and Plaintiff's statements contained within the record (Tr. 698).

In reference to Plaintiff's medical history, the ALJ noted that there is no evidence of neurological abnormality and that Plaintiff's treating physician, Dr. Murray, would not have repeatedly recommended exercise if Plaintiff's pain were as limiting as he claims (Tr. 698; *see also* Tr. 475, 489-90).  Furthermore, the ALJ stated that he would have expected Dr. Lorber, a board certified specialist in orthopedic surgery, to have been able to identify a cause for Plaintiff's excessive pain based on his review of Plaintiff's extensive medical record (which he could not) (Tr. 689; *see also* Tr. 856-58).

In regards to the reports of Plaintiff's treating and examining sources, the ALJ noted that there is evidence Plaintiff may be prone to exaggeration and motivated by secondary gain (Tr. 698).  Specifically, the ALJ pointed to a functional capacity evaluation ("FCE") wherein Plaintiff demonstrated "inconsistent performance" during a weight carry test (Tr. 698).  The FCE report states that Plaintiff reported increasing levels of pain when various sizes of weights were exchanged even though there was no actual increase in weight (Tr. 787).  Additionally, the ALJ noted that Plaintiff had three positive Waddell signs in February 1996 (Tr. 698).[5]

Concerning Plaintiff's statements contained within the record, the ALJ mentioned that, in 1998, Plaintiff presented to vocational consultant, Patricia Marshall ("Ms. Marshall"),

---

[5]Under the Waddell test, the examiner investigates certain clinical findings while evaluating a patient complaining of back pain.  Gordon Waddell et al., *Nonorganic Physical Signs in Low-Back Pain,* 5 SPINE 117, 117-25 (Mar.-Apr.1980).  Each sign is caused by non-anatomical (functional) factors and implies that the back pain has no physical cause.  *See* 5 ATTORNEYS' TEXTBOOK OF MEDICINE P 15 A. 83 (Roscoe N. Gray and Louise J. Gordy eds., 3d ed. 2000).  While one or two of these signs may arise from patient anxiety or eagerness to cooperate, three or more are usually considered sufficient to make a diagnosis of functional disorder or deliberate deception (malingering) and to rule out physical abnormality.  *See id.*  "While a positive test in one category is not considered conclusive, when three of the five categories are positive, there is a high probability of nonorganic pathology."  *Id.*

13

as being functionally illiterate and having no education or training beyond high school (Tr. 698; *see also* Tr. 633-37).   The ALJ noted Plaintiff's statements to Ms. Marshall are inconsistent with information contained within the record, which indicates Plaintiff attended two years of college and that he spends time reading (Tr. 698; *see also* Tr. 805, 176). Additionally, the ALJ pointed out that Plaintiff stated he would like to return to college in order to take computer classes (Tr. 698; *see also* Tr. 177).

The undersigned finds the ALJ clearly articulated at least three reasons to support his credibility finding and the Court finds the reasons articulated by the ALJ for discounting Plaintiff's statements regarding the disabling nature of his pain are supported by substantial evidence.   If an ALJ gives at least three reasons for discrediting a plaintiff's subjective complaints of pain, a court may find the ALJ properly discredited the subjective pain testimony.   *See Allen*, 880 F.2d at 1203.

## C.  Whether the ALJ Erred by not According Proper Weight to the Opinions of Plaintiff's Treating Physicians and Whether he Failed to Properly Address Plaintiff's Mental Impairment(s)

Plaintiff next argues the ALJ failed to accord proper weight to the opinions of his treating physicians, Dr. Murray and Dr. Pruitt, and that the ALJ failed to properly address his mental impairment(s) (Doc. #26 at 21-22).[6]  The undersigned finds Plaintiff's argument

---

[6]Plaintiff also argues that the ALJ erred by not giving great weight to certain facts contained within an order approving a lump-sum settlement under Florida's worker's compensation law (Doc. #26 at 22-23).  Plaintiff is correct that the findings of disability by another agency, although not binding on the Commissioner, are entitled to great weight.  *Bloodsworth*, 703 F.2d at 1241. Concerning whether the ALJ should have considered Plaintiff's worker's compensation insurance settlement a finding by a government agency, the Court finds that *Dunn v. Comm'r of Soc. Sec.*, which addresses this very issue, is persuasive. Civ. Action No. 6:03-cv-798-J-DAB (M.D. Fla. June 9, 2004).  In *Dunn*, the district court held that a worker's compensation settlement is not a "finding" of an agency regarding a disability determination. *Id.* Furthermore, it is clear from the ALJ's decision and his extensive discussion of the worker's compensation evidence submitted by Plaintiff that the ALJ gave a significant amount of consideration to the worker's compensation evidence.  Thus, the ALJ committed no err by not attributing great weight to Plaintiff's worker's compensation settlement.

14

as to Dr. Pruitt's opinion is without merit; however, the undersigned finds Plaintiff's argument with respect to Dr. Murray's opinion is persuasive.

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards*, 937 F.2d at 583 (11th Cir. 1991). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is consistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527. The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d at 583.

Here, Plaintiff maintains the ALJ erred by not giving controlling weight to the retrospective opinion of Dr. Pruitt that Plaintiff was incapable of returning to work prior to his date of last insured (September 30, 1995) due to depression (Doc. #26 at 17-19). The undersigned, however, finds the ALJ properly discounted Dr. Pruitt's opinion in this regard by noting his opinion is conclusory and inconsistent with his own statements regarding Plaintiff's capabilities (Tr. 697).

The ALJ determined Dr. Pruitt's September 15, 1998 retrospective opinion that Plaintiff's depression caused him to have no ability to function is conclusory because it is not supported by clinical findings or observations (Tr. 697). The ALJ noted that there is no evidence that establishes Dr. Pruitt had any first-hand knowledge of Plaintiff's mental status

prior to his date of last insured (Tr. 695).  Although Dr. Pruitt stated his findings were based on the "attached progress notes," the ALJ pointed out that the attached progress notes relate only to fifteen (15) minute therapy sessions that took place in 1997 and 1998, and that none of those progress notes mention disabling limitations on or before September 30, 1995 (Tr. 695; *see also* Tr. 629, 631).  "While a retrospective opinion can prove the existence of a disability, the retrospective opinion must refer clearly to the relevant period of disability."  *Lofgren v. Astrue*, No. 1:06-cv-00143 MP-AK, 2008 WL 1323396, slip op. at *2 (N.D. Fla. April 4, 2008).[7]

Additionally, in support of his decision not to afford Dr. Pruitt substantial or considerable weight, the ALJ cited Dr. Pruitt's statements concerning Plaintiff's vocational capabilities.  The ALJ noted that, on August 12, 1996, Dr. Pruitt recommended that Plaintiff pursue volunteer work, and on January 16, 1997 Dr. Pruitt stated Plaintiff could return to work as a self-employed janitor (Tr. 696; *see also* Tr. 286, 308).  The ALJ mentions that, if Plaintiff were as limited as Dr. Pruitt's assessment suggests, then Dr. Pruitt would not have recommended Plaintiff pursue volunteer opportunities or self-employment (Tr. 696).

In regards to Plaintiff's argument that the ALJ did not properly assess Plaintiff's mental impairment(s), the undersigned finds this argument unpersuasive because the ALJ found Plaintiff's depression to be a severe impairment and then proceeded to apply the special standard for analyzing mental impairments under the Regulations.

The Commissioner has supplemented the five-step sequential evaluation process for evaluating a claimant's eligibility for benefits with additional regulations that deal

---

[7]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

specifically with mental impairments, otherwise known as the "special technique."   20 C.F.R. § 404.1520a.  This "special technique" requires the ALJ to, *inter alia*, evaluate the pertinent signs, symptoms, and laboratory findings contained within the case record in order to determine if a mental impairment exists.   20 C.F.R. § 404.1520a(b)(1).   If an impairment is found, the ALJ must analyze whether certain medical findings relevant to the claimant's ability to work are present or absent.   20 C.F.R. § 404.1520a(b).

The examiner must then rate the degree of functional loss resulting from the impairment in certain areas deemed essential for work. 20 C.F.R. § 404.1520a(d).  These areas are: daily living; social functioning; concentration, persistence, or pace; and deterioration or decompensation in work or work-like settings.   20 C.F.R. § 404.1520a(c)(3).  If the mental impairment is considered "severe", the examiner must then determine whether it meets a listed mental disorder.  20 C.F.R. § 404.1520a(d)(2).  If the impairment is severe, but does not reach the level of a listed disorder, then the examiner must conduct a RFC assessment.  20 C.F.R. § 404.1520a(d)(3).

The Regulations provide as follows:

When we [the SSA] rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme.  When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more.  The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

20 C.F.R. § 404.1520a(c)(4).

The ALJ's evaluations regarding the degree of functional loss in the four aforementioned areas of function must be incorporated into his or her findings and

17

conclusions.  *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005).  "Where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF [Psychological Review Technique Form] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions.  Failure to do so requires remand."  *Id.* at 1214.

Here, the ALJ applied the "special technique" and accepted evidence that Plaintiff's mental impairment(s) caused him to have slight restrictions in activities of daily living; slight difficulties in maintaining social functioning; slight deficiencies in concentration, persistence, or pace; and no episodes of decompensation each of extended duration (Tr. 690).  Based on the foregoing, the undersigned finds the ALJ properly addressed Plaintiff's mental impairment(s) when he found Plaintiff's depression was a severe impairment and then proceeded to apply the "special technique."  Since the ALJ found Plaintiff's mental impairment(s) only resulted in slight limitations in all of Plaintiff's functional areas and that he has not experienced an episode of decompensation, the undersigned finds the ALJ properly determined Plaintiff's mental limitations, alone or in combination with his physical impairments, were not disabling.

Plaintiff additionally argues that the ALJ erred by not giving controlling weight to Dr. Murray's, November 17, 2000, report that Plaintiff's chronic pain, loss of range of motion ("ROM"), deconditioning, and depression are disabling (Doc. #26 at 16; *see also* Tr. 641-45).  The undersigned finds this argument persuasive to the extent that one of the primary reasons the ALJ cited for discounting Dr. Murray's medical opinion is not supported by the evidence of record.

To illustrate, in support of his determination that Dr. Murray's medical opinion should not be afforded controlling weight, the ALJ stated that, in a final report to the Florida Worker's Compensation Board, Dr. Murray reported Plaintiff had reached MMI on June 13, 1994, and that "he had been restricted to full-time sedentary work" (Tr. 693). This statement is not supported by the record.

Although the record does reflect Plaintiff reached MMI on June 13, 1994, it does not reflect that Dr. Murray released Plaintiff to full-time work at that time. The undersigned notes that the record is unclear as to the exact date Plaintiff was released to full-time work by Dr. Murray; however, it does show Dr. Murray continued to restrict Plaintiff to part-time work as late as April 12, 1995 (*see* Tr. 488).

Specifically, in a March 13, 1995 "Authorization for Returning to Work," Dr. Murray stated Plaintiff was restricted to working four (4) hours per day until April 13, 1995, at which time he would be restricted to working six (6) hours per day until May 13, 1995, whereupon he would be released to working a full eight (8) hour day (Tr. 477). In a subsequent April 12, 1995 "Authorization for Returning to Work," however, Dr. Murray stated Plaintiff was to continue working only four (4) hours per day "until further notice" (Tr. 488).

The ALJ stated he did not give controlling weight to the aforementioned part-time work restrictions because those restrictions were superceded by Dr. Murray's final report to the Florida Worker's Compensation Board, dated July 1, 1996 (Tr. 458-59, 693). The undersigned, however, is not convinced that Dr. Murray's final report to the Florida Worker's Compensation Board supercedes the concurrent work restrictions he placed on Plaintiff in the aforementioned authorizations to return to work, particularly since Dr. Murray's final report was submitted more than one year after the authorizations to return

19

to work were entered (Tr. 458-59, 477, 488).

Under the facts of this case, Plaintiff needed to show he was disabled prior to September 30, 1995, his date last insured, in order to be granted disability benefits.  The record clearly indicates that, as of April 12, 1995, Plaintiff's treating Physician had not yet released him to full-time work status (Tr. 488).  The ability to work is defined as the ability to perform basic work functions on a "regular and continuous basis."  20 C.F.R. § 404.1545(b)(c).  The Commissioner has clarified that the ability to perform sustained work on a regular and continuous basis is synonymous with an eight hour day, five days per week (or equivalent) work schedule.  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).

Additionally, Dr. Murray's final report to the Florida Worker's Compensation Board is cryptic and not entirely clear.  For instance, the report is titled "Follow-Up Visit" and it indicates Dr. Murray discussed Plaintiff's MMI with Plaintiff's worker's compensation case manager, and "gave restrictions" (Tr. 458).  Next, there is illegible script preceding a parenthetical, which states "see attached" (Tr. 458).  The subsequent page (presumably the attachment since the signature date is the same as the date on the report) is the second page of a two page questionnaire, dated April 10, 1996 (Tr. 459).[8]

This page of the questionnaire begins with question number four–the answer to which states Plaintiff's permanent impairment rating changed since he was found to be at MMI on June 13, 1994 from 13-15 percent to 13 percent (Tr. 459).  The answer to the following question, which concerns Plaintiff's anticipated return to work date, states that

---

[8]The first page of this questionnaire is not contained within the record.

Plaintiff's anticipated return to work date would be July 2, 1996 "as per Dr. Pruitt," and that Plaintiff can return to full-time sedentary work, with restrictions (presumably on his return to work date of July 2, 1996) (Tr. 459). Based on the foregoing, the undersigned is unable to deduce from the aforementioned information that Plaintiff was released to full-time sedentary work as of his June 13, 1994 MMI date.

Accordingly, the undersigned finds the primary reason cited by the ALJ for discounting the opinion Dr. Murray is not supported by the record. The undersigned, however, does commend the ALJ for his efforts in dealing with an extremely difficult record. As stated, *supra*, the letter by Dr. Murray is cryptic and extremely difficult to decipher. The ALJ's decision, up until this point, was well reasoned and well supported by the record. The undersigned is simply unable to confirm that Dr. Murray stated Plaintiff could return to work on a full-time basis as of his June 13, 1994 MMI date. On remand, if the Commissioner is unable to clarify the record as it relates to Dr. Murray's opinion, perhaps the Commissioner can use other evidence of record to discount Dr. Murray's opinion.

**D. Whether the ALJ Failed to Properly Evaluate Plaintiff's RFC**

Plaintiff's final argument is that the ALJ erred by failing to find Plaintiff only has the ability to sit for 30-45 minutes (Doc. #26 at 1). Specifically, Plaintiff cites the results of a Functional Capacity Evaluation, performed on April 22, 1994, which (as Plaintiff maintains) concludes he can only sit for 30-45 minutes (*see* Tr. 547). This argument is flawed for several reasons.

First, it appears Plaintiff's assessed maximum ability to sit for 30-45 minutes relates to his ability to sit without interruption. To illustrate, the evaluator stated Plaintiff's "functional capabilities [are] consistent with the sedentary work level as outlined by the

Dictionary of Occupational Titles ("DOT"), Volume 2" (Tr. 547).   The DOT states that sedentary work "involves sitting most of the time, but may involve walking or standing for brief periods of time."  United States Dep't of Labor, *Dictionary of Occupational Titles*, 1013 (4th Ed. 1991).  Although the FCE report is not as specific as it should be, it is clear from the report that the examiner believed Plaintiff could meet the demands of sedentary work as defined by the DOT.

Second, the examiner reported that Plaintiff's examination results were not an accurate assessment of his true functional capabilities because he demonstrated inconsistent performance during the evaluation (Tr. 547).  Specifically, the examiner stated Plaintiff demonstrated inconsistent performance during the examination by reporting increasing levels of pain when various sizes of weights were exchanged even though there was no actual increase in weight (Tr. 547).  Furthermore, it was the examiner's opinion that, because of Plaintiff's inconsistent performance during the examination, Plaintiff would likely have the ability to perform light work (Tr. 547).

Third, although the ALJ found Plaintiff had the RFC to sit for six (6) hours, at the October 13, 2005 hearing, the ALJ asked the vocational expert to assume Plaintiff had the limitations as described by the testifying medical expert, Dr. Lorber, who stated Plaintiff could only sit for six (6) hours on an intermittent basis (Tr. 858).  The record reflects the VE included the limitations as described by Dr. Lorber when she provided a list of other jobs in the regional and national economy that Plaintiff could perform despite his limitations (see Tr. 867-71).

Although the reason cited by Plaintiff to support his contention that the ALJ failed to properly evaluate Plaintiff's RFC is without merit, the undersigned nevertheless finds

Plaintiff's assessed RFC is not supported by substantial evidence because the ALJ's primary reason for discounting Plaintiff's treating physician, Dr. Murray, is not supported by the record, as discussed *supra*.

## V. Conclusion

Based on the foregoing, the undersigned finds the ALJ's decision is not supported by substantial evidence of record.  Accordingly, the Commissioners decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

Upon remand, the Commissioner shall reevaluate the opinion of Plaintiff's treating physician, Dr. Murray, in accordance with this Order and Opinion.

## VI. Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.  The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits.  *See Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1278 (11th Cir. 2006); *compare* Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a).

**DONE AND ORDERED** at Jacksonville, Florida, this  30th  day of September, 2008.

Copies to all counsel of record

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge